WALTER F. MORTON ET AL. v. THE BLADES LUMBER COMPANY, MOLLIE E. MORTON ET AL.

(Filed 15 March, 1911.)

1. Deeds and Conveyances—Mortgages—Assignments—Seal—Title—Trusts and Trustees.

The grantee in a mortgage deed assigned the deed under a writing thereon as follows: "For value received the F. and M. Bank hereby bargains and sells to M., his heirs and assigns, this mortgage and all its rights, title, and interest to the property therein, together with all rights and powers contained in said mortgage, without recourse to said bank." The assignment was signed by the proper officers of the bank, and it is *Held*, (1) lacking the seal, the assignment could not operate as a conveyance by the corporation; (2) if with the corporate seal, the assignment was solely of the mortgage deed, the written instrument of conveyance, and the security it affords to the holding of the debt, and it did not convey to the assignee the legal title subject to the trusts and powers contained in the mortgage.

2. Same—Foreclosure—Procedure—Rights of Assignee.

Under an assignment by the mortgagee of the deed, insufficient to pass the legal title, the assignee acquires only the mortgage debt and the right by proper legal proceedings to subject the lands to its payment.

3. **Deeds and Conveyances—Mortgages—Assignments—Title—Principal and Agent—Payment—Ratification—Issues—How Considered—Invalid Sale—Equities—Charge Upon Land.**

The owner of three tracts of land, by his agent M., gave to B. a sixty-day option on the timber growing thereon, at the price of $1,400. On one of these tracts of land a mortgage had been executed by the owner to a bank to secure an indebtedness of $160, which was assigned to M. by the bank by a writing on the instrument insufficient to pass the title. M. borrowed $150 of B., and gave him the assigned mortgage as security, and without the knowledge of the mortgagor M. foreclosed, and B., the holder of the option, became the purchaser. It was found by the jury in response to two of the issues submitted that B. had paid $670 and that the mortgagor had received from M. "all the proceeds of the mortgage sale under the agreement": *Held*, (1) the two issues must be considered with reference to the pleadings and evidence; (2) that the word "agreement" referred to the timber option, the only agreement known to the owner; (3) in selling under the mortgage on the land, M. acted as the agent of B., the owner of the mortgage debt; (4) the land mortgaged being in a tract larger than the other two and containing timber estimated at more than one-half of the timber embraced by the option, the $670 paid by M. was the amount due for the timber on that land, which the owner ratified by accepting, and to that timber B. got a clear title; (5) in equity the mortgaged lands should only be chargeable with the $160 secured by the mortgage to the bank, in favor of B., who had paid it.

APPEAL from *Ward, J.*, at November Term, 1910, of CRAVEN. In this action these issues were submitted to the jury:

1. Did Mollie E. Morton, widow of M. F. Morton, become the owner in fee of the lands in question at the death of said M. F. Morton? Answer: Yes.

2. Did the Blades Lumber Company, through W. B. Blades, collude with J. A. Morton to procure the note and mortgage to be assigned to said Morton, and procure the land therein described to be sold with purpose of gaining the same to the loss of profit of plaintiffs? Answer: No.

3. Did the legal title to said lands pass to Blades Lumber Company under deed of J. A. Morton, dated 11 November, 1901? Answer: No.

4. What amount of money has been paid, in all, by said Blades Lumber Company? Answer: $670, paid 11 November, 1901.

5. Did Mollie E. Morton accept and receive from J. A. Morton all the proceeds of the mortgage sale under agreement? Answer: Yes.

His Honor, upon these findings, adjudged the defendant Mollie E. Morton to be the owner in fee of the tract of land described in the complaint and in the mortgage from M. F. Morton and wife to the Farmers and Merchants Bank and in the deed from J. A. Morton to W. B. Blades and others dated 11 November, 1901, but charged the land with $670 and interest from 11 November, 1901, in favor of the Blades Lumber Company, the grantee of W. B. Blades and his associates.

To this judgment the Blades Lumber Company and W. B. Blades excepted and appealed.

*W. D. McIver for plaintiff.*
*Moore & Dunn and Guion & Guion for defendants.*

BROWN, J. It appears from the record that the defendant Mollie E. Morton filed an answer in which she claimed the tract of land by survivorship, which has been adjudged in her favor. In her answer she adopts certain allegations in the complaint and asks as against the Blades Lumber Company and W. B. Blades and his associates the same relief which the plaintiffs asked against those defendants.

The facts which appear to be admitted or found by the jury are as follows: On 12 September, 1901, J. A. Morton, agent for J. R. Henry and Mollie E. Morton, executed to the Blades Lumber Company an option for sixty days for the timber of a certain size on three tracts of land, one of which was the tract of land under mortgage to the Farmers and Merchants Bank. The option price was $1,400.

The timber only was embraced in this contract. The land belonging to Mrs. Morton had been conveyed by herself and husband by mortgage, dated 22 June, 1891, to the Farmers and

Merchants Bank, securing a note for $160. After M. F. Morton's death this mortgage was assigned to J. A. Morton in these words:

For value received, the Farmers and Merchants Bank hereby bargains and sells to J. A. Morton, his heirs and assigns, this mortgage and all its rights, title, and interest to the property described therein, together with all rights and powers contained in said mortgage, without recourse to said bank.

L. H. CUTLER, *President.*

July 5, 1901.                    T. W. DEWEY, *Cashier.*

On 6 November, 1901, J. A. Morton assigned said note and mortgage to W. B. Blades as collateral security for a debt of $150 due said Blades by said Morton.

On 11 November, 1901, this mortgage was foreclosed by J. A. Morton, and the land sold at public sale to W. B. Blades and others, trading as the Blades Lumber Company, for $350, and J. A. Morton executed a deed to them in pursuance of the power of sale contained in the mortgage.

1. It is contended by the defendants, the Blades, that they acquired an indefeasible title to the land by virtue of said conveyance, and that his Honor erred in directing a verdict on the third issue.

It is to be observed that the assignment to Morton by the officers of the bank is not a deed, for it lacks the seal of the corporation. If it had a seal it does not in terms profess to act upon the land, the subject-matter of the mortgage deed, nor upon any estate or interest which the assignor, the bank, may have therein.

This assignment does not convey to Morton the legal title subject to the trusts and powers contained in the mortgage. It is the mortgage deed, the written instrument of conveyance, and the security it affords to the holding of the debt, that is assigned, not the land itself.

The legal title remained in the Farmers and Merchants Bank undisturbed, and held in trust by it for the benefit of the owner of the note.

This assignment vested in Morton no authority whatever to

execute the power of sale contained in the mortgage, and consequently he could convey nothing to Blades; and the latter acquired nothing except the mortgage debt and the right by proper legal proceedings to subject the land to its payment.

The assignment is in terms very similar to that in *Williams v. Teachey,* 85 N. C., 403, a case frequently cited and approved. *Dameron v. Eskridge,* 104 N. C., 621; *Hussey v. Hill,* 120 N. C., 312; *Morton v. Lumber Co.,* 144 N. C., 33.

2. It is contended that Mrs. Morton is estopped from denying Blades' title to the land because she ratified the foreclosure sale and received the proceeds. In support of this contention the Blades Company relies upon the findings to the 4th and 5th issues. These two issues must be considered together and construed with reference to the pleadings and the evidence. The word "agreement" used in the 5th issue must refer to the option to purchase the timber. There is not a scintilla of evidence that Mrs. Morton was a party to or had knowledge of any other agreement, or that any other contract or agreement was entered into by J. A. Morton in her behalf. There is no evidence that Mrs. Morton had any knowledge of the foreclosure sale or ratified it by word or act. When that sale was conducted by J. A. Morton he was not acting as her agent, for she was the mortgagor, but he was acting for Blades, who held the mortgage debt and was to all intents and purposes the mortgagee. He had furnished J. A. Morton the money with which to take up the mortgage debt and he had assigned it to Blades before the foreclosure sale.

The sale was conducted by Blades' own agent, J. A. Morton, and Blades' attorneys prepared the deed, although Blades deducted the attorneys' fees from the timber option-money due Mrs. Morton, and of this deduction she appears to have had no knowledge.

The entire evidence for plaintiff as well as defendants shows conclusively that Mrs. Morton received nothing on account of the foreclosure sale of the land, and that Blades paid nothing for the land except the $150 advanced to J. A. Morton and for which he assigned to Blades, prior to the foreclosure, the bank mortgage.

The timber agreement of 12 September, 1901, relates to the timber only and not to the land. By its terms Blades had the right to purchase the timber for $1,400. It covered the tract now in controversy, also one tract belonging to J. R. Henry and one other small tract of Mrs. Morton's. The evidence of R. H. Mills, the witness and agent of Blades, who negotiated the timber sale, proves that the tract in controversy was larger than the two other tracts mentioned in the option, and that the timber on it was worth, as estimated by him, a little more than one-half of the $1,400 to be paid for the timber on all three tracts.

W. B. Blades testifies: "We settled with J. A. Morton for the three tracts of land according to the option, less some expenses for perfecting the title." What option? There was only one in this record, and that relates to the timber and not to the land. So it is indisputable that the $670 paid Mrs. Morton was the amount due her for the timber on this land in controversy, according to the terms of the option agreement, and when she received it she received it as such, and without any knowledge that it was intended as payment for the land itself.

All the evidence shows that the only money Blades is out of pocket on account of this land is $670 timber option-money and the amount he paid for the bank mortgage, about $150.

We therefore have no difficulty in concluding that the issues as framed and answered by the jury, construed with reference to the pleadings and all the evidence, including that offered by the Blades Company, do not estop Mrs. Morton from asserting her title to the land in controversy.

In adjusting the equities between the parties we think the land should be charged in any event with the amount due on the mortgage debt of the Farmers and Merchants Bank assigned to Blades, which the judgment fails to do.

We are also of opinion that it is erroneous to charge the land with the $670 paid to Mrs. Morton for the timber. This is more prejudicial to Blades than to Mrs. Morton, as it can be justified only in the assumption that as Blades acquired no title to the land, he acquired none to the timber, and that he or his assigns may still be held accountable for its value by Mrs. Morton, if it has been cut.

When Mrs. Morton received the $670 she received it in payment for the timber in manner and form as set out in the written contract dated 12 September, 1901, and which is made a part of the answer of the Blades Company. By this she ratified and confirmed the sale of the timber of the dimensions therein expressed to Blades, and he and his assigns have acquired an equitable title thereto which the courts will enforce.

Therefore, inasmuch as Blades has acquired title to such timber as he paid the $670 for, and cannot be made to answer for damages for having cut it, the land should not be charged with that sum, because that would imply an adjudication that Blades acquired no title to the timber.

Let the costs of this appeal be taxed against the Blades Company and W. B. Blades.

As modified, the judgment of the Superior Court is
Affirmed.